IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LAITRAM, L.L.C., and INTRALOX, L.L.C., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1130 (LPS) |
| | ) | |
| ASHWORTH BROS., INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## ANSWER TO ASHWORTH BROS., INC.'S COUNTERCLAIMS

Pursuant to Fed. R. Civ. P. 12(a)(1)(B), Plaintiffs and Counterclaim Defendants, Laitram, L.L.C., and Intralox, L.L.C., (collectively, "Plaintiffs") hereby answer the Counterclaims served on September 4, 2019 by Ashworth Bros., Inc. ("Ashworth") (D.I. 10). Plaintiffs generally deny each and every allegation stated in Ashworth's Counterclaims except those allegations specifically admitted herein.

### PARTIES

104. Ashworth is a corporation organized under the laws of the State of Delaware with its headquarters located at 222 Milliken Boulevard #7, Fall River, Massachusetts.

**ANSWER:** Admitted.

105. On information and belief based solely on Paragraph 1 of the Complaint, Laitram, L.L.C. ("Laitram") is a limited liability company organized and existing under the laws of the state of Louisiana and having a principal place of business at 200 Laitram Lane, Harahan, Louisiana 70123.

**ANSWER:** Admitted.

106. On information and belief based solely on Paragraph 2 and 3 of the Complaint, Intralox L.L.C. ("Intralox") is a wholly owned subsidiary of Laitram and is a limited liability company organized and existing under the laws of the state of Louisiana and having a principal place of business at 200 Laitram Lane, Harahan, Louisiana 70123.

**ANSWER:** Admitted.

**JURISDICTION AND VENUE**

107. This Court has personal jurisdiction over Laitram. Laitram is a named plaintiff in this action and has consented to the personal jurisdiction of this Court by filing its Complaint (D.I. 1) against Ashworth.

**ANSWER:** Admitted.

108. Plaintiffs have charged Ashworth with infringement of U.S. Patent No. 10,023,388 ("the '388 Patent") and U.S. Patent No. 10,189,645 ("the '645 Patent"). Ashworth has denied the charges of infringement and has alleged that the patents are invalid.

**ANSWER:** Admitted.

109. Subject to Ashworth's defenses and denials, Ashworth alleges that this Court has subject matter jurisdiction over the subject matter of these Counterclaims, without limitation, pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), 1367, 2201, and 2202 as they arise under an Act of Congress relating to patents and the Declaratory Judgment Act.

**ANSWER:** Admitted.

110. Venue is appropriate in this District over these Counterclaims because Laitram has consented to the propriety of venue in this Court by filing its Complaint in this Court, in response to which these Counterclaims are asserted.

**ANSWER:** Admitted.

111. Based on Plaintiff's filing of its Complaint and Ashworth's answer and affirmative defenses, a true, actual, and justiciable controversy has arisen and now exists between Ashworth and Laitram regarding the non-infringement and invalidity of the '388 and '645 Patents.

**ANSWER:** Admitted as to the assertion that a true, actual, and justiciable controversy has arisen and exists between Ashworth and Laitram regarding the '388 and '645 Patents. All other allegations in paragraph 111 are denied.

**COUNT I**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT ('388 PATENT)**

112. Ashworth incorporates Paragraphs 104 through 111 of its Counterclaims as though fully set forth herein.

**ANSWER:** Plaintiffs incorporate herein by reference their answers to paragraphs 104-111.

113. Ashworth has not infringed and is not infringing, literally or under the doctrine of equivalents, directly or indirectly, any valid and enforceable claim of the ’388 Patent.

**ANSWER:** Denied.

114. Ashworth is entitled to a declaratory judgment that it has not infringed and does not infringe, literally or under the doctrine of equivalents, directly or indirectly, any valid and enforceable claim of the ’388 Patent.

**ANSWER:** Denied.

## COUNT II
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT ('645 PATENT)

115. Ashworth incorporates Paragraphs 104 through 114 of its Counterclaims as though fully set forth herein.

**ANSWER:** Plaintiffs incorporate herein by reference their answers to paragraphs 104-114.

116. Ashworth has not infringed and is not infringing, literally or under the doctrine of equivalents, directly or indirectly, any valid and enforceable claim of the ’645 Patent.

**ANSWER:** Denied.

117. Ashworth is entitled to a declaratory judgment that it has not infringed and does not infringe, literally or under the doctrine of equivalents, directly or indirectly, any valid and enforceable claim of the ’645 Patent.

**ANSWER:** Denied.

## COUNT III
## DECLARATORY JUDGMENT OF INVALIDITY ('388 PATENT)

118. Ashworth incorporates Paragraphs 104 through 117 of its Counterclaims as though fully set forth herein.

**ANSWER:** Plaintiffs incorporate herein by reference their answers to paragraphs 104-117.

119. Claims 9-13 of the ’388 Patent are invalid because they fail to meet one or more requirements set forth in 35 U.S.C. §§ 102, 103, or 112.

**ANSWER:** Denied.

120. For example claims 9-13 of the ’388 Patent are at least invalid for obviousness in view of the teachings in U.S. Patent Nos. 6,062,375 and 3,348,659.

**ANSWER:** Denied.

121. U.S. Patent No. 6,062,375 to Pupp et al ("Pupp") was published on May 16, 2000 and is prior art to the '645 Patent.

**ANSWER:** It is not clear how alleged prior art to the '645 Patent is relevant to Ashworth's request for declaratory judgment of invalidity of the '388 Patent. Accordingly, Plaintiffs assume—and responds according to its assumption—that Ashworth intended to allege the patent referenced in paragraph 121 is prior art to the ***'388 Patent***. Plaintiffs admit only that the face of the '375 Patent identifies Pupp as an inventor. To the extent that paragraph 121 alleges any other facts, they are denied.

122. U.S. Patent No. 3,348,659 to Roinestad ("Roinestad") was published on October 24, 1967 and is prior art to the '645 Patent.

**ANSWER:** It is not clear how alleged prior art to the '645 Patent is relevant to Ashworth's request for declaratory judgment of invalidity of the '388 Patent. Accordingly, Plaintiffs assume—and responds according to its assumption—that Ashworth intended to allege the patent referenced in paragraph 122 is prior art to the ***'388 Patent***. Plaintiffs admit only that the face of the '659 Patent identifies Roinestad as an inventor. To the extent that paragraph 122 alleges any other facts, they are denied.

123. U.S. Patent No. 5,375,695 to Daringer et al ("Daringer") was published on December 27, 1994 and is prior art to the '645 Patent.

**ANSWER:** It is not clear how alleged prior art to the '645 Patent is relevant to Ashworth's request for declaratory judgment of invalidity of the '388 Patent. Accordingly, Plaintiffs assume—and responds according to its assumption—that Ashworth intended to allege the patent referenced in paragraph 123 is prior art to the ***'388 Patent***. Plaintiffs admit only that the face of the '695 Patent identifies Daringer as an inventor. To the extent that paragraph 123 alleges any other facts, they are denied.

124. Each of Pupp, Roinestad, and Daringer are directed to conveyor systems and would be known to one of ordinary skill in the art of the '388 Patent.

**ANSWER:** Denied.

125. Claim 9 of the '388 Patent reads as follows: A spiral conveyor comprising: a drive tower extending from a bottom to a top and rotating about a vertical axis; a plurality of parallel drive members extending in length from the bottom to the top of the drive tower; wherein each of the drive members includes an outwardly projecting ridge whose distance from the vertical axis varies from the bottom to the top of the drive tower; and wherein each drive member includes a lower segment at the bottom of the drive tower and wherein the ridge in the lower segment is tapered along a portion of its length; a conveyor belt positively driven without slip on a helical path around the drive tower by the ridges of the drive members engaging an inside edge of the conveyor belt.

**ANSWER:** Admitted.

126. Claim 10 of the '388 Patent reads as follows: A spiral conveyor as in claim 9 wherein the distance of the ridge from the vertical axis in the lower segment is constant below the portion that is tapered.

**ANSWER:** Admitted.

127. Claim 11 of the '388 Patent reads as follows: A spiral conveyor comprising: a drive tower extending from a bottom to a top and having a vertical axis of rotation; a plurality of parallel drive members extending in length from the bottom to the top of the drive tower; wherein each of the drive members includes a ridge projecting radially outward to an outer edge; wherein each of the drive members includes a lower segment at the bottom of the drive tower and an upper segment extending from the lower segment toward the top of the drive tower; wherein the distance of the outer edge of the ridge from the vertical axis of rotation is a first distance in the upper segment and the distance of the outer edge of the ridge from the vertical axis of rotation is a greater second distance in a lower portion of the lower segment; a conveyor belt positively driven on a helical path around the drive tower by the ridges of the drive members engaging an inside edge of the conveyor belt.

**ANSWER:** Admitted.

128. Claim 12 of the '388 Patent reads as follows: A spiral conveyor as in claim 11 wherein the distance of the outer edge of the ridge from the vertical axis of rotation in an upper portion of the lower segment increases from the first distance at the upper segment to the greater second distance at the lower portion of the lower segment.

**ANSWER:** Admitted.

129. Claim 13 of the '388 Patent reads as follows: A spiral conveyor as in claim 12 wherein the distance of the outer edge of the ridge from the vertical axis of rotation in the upper

portion of the lower segment increases linearly from the first distance to the greater second distance.

**ANSWER:** Admitted.

130. As shown below in FIGS, 1 and 5 and described in the text of Pupp, for example, Pupp teaches and/or describes a drive tower (drum 1) extending from a bottom to atop and rotating about a vertical axis of rotation (vertical center shaft 4, 4'):




**ANSWER:** Denied.

131. As shown below in FIGS. 5 and 6 and described in the text of Pupp, for example, Pupp teaches and/or describes a plurality of parallel drive members (strips 10) extending in length from the bottom to the top of the drive tower (drum 1):




**ANSWER:** Denied.

132. As shown below in FIGS. 5, 6, and 8 and described in the text of Pupp, for example, Pupp teaches and/or describes each of the drive members (strips 10) including an outwardly projecting ridge:




**ANSWER:** Denied.

133. As shown below in FIG. 1 and described in the text of Roinestad, for example, Roinestad teaches and/or describes drive towers (upright frusto-conical driving drums 12 and 13) each of which is tapered in the direction of belt travel axially of the drum and whose distance from the vertical axis varies from the bottom to the top of the drive tower:




**ANSWER:** Denied.

134. As shown and/or described in the text of Daringer, one of ordinary skill in the art at the time of the alleged invention in the ’388 Patent would understand that a teaching and/or description of cylindrical surfaces would also include a teaching and/or description of conical or tapered surfaces, viewed in a plane which includes the axis of rotation.

**ANSWER:** Denied.

**135.** It would have been obvious to one of ordinary skill in the art to modify the projecting ridge of Pupp in view of Roinestad as a mere design choice in view of the level of ordinary skill in the art as demonstrated by the teachings of Daringer, to provide a projecting ridge whose distance from the vertical axis varies from the bottom to the top of the drive tower (drum).

**ANSWER:** Denied.

136. As shown below in FIGS 11-13 and described in the text of Roinestad, each drive member (rod 304) includes a lower segment at the bottom of the drive tower (drum 301) wherein the ridge in the lower segment of the drive member (rod 304) is tapered along a portion of its length:

Fig. 11.







Fig. 12.

Fig. 13.




**ANSWER:** Denied.

137. As shown below in FIG 1 and described in the text of Pupp, the prior art conveyor belt (2) coped with the circumferential friction usually by a driving engagement from a positive engagement between the drum and the inside of the conveyor belt along the helical path.




**ANSWER:** Denied.

138. As shown below in FIGS. 11 and 12 and described in the text of Roinestad, for example, Roinestad taught a spiral conveyor where there were upper and lower segments of the drive member (rod 304) wherein the distance from the vertical axis in the lower segments of the drive member (rod 304) is constant below that which is tapered and taught and wherein the distance from the vertical axis to the lower segment is not equal to the distance from the vertical axis to the upper segment. Particularly, the distance of the vertical axis to the outer edge of the

upper segment of rod 304 could be either larger or smaller than the distance of the vertical axis to the outer edge of the lower segment of rod 304. Even more particularly the distance of the vertical axis to the outer edge of the upper segment of rod 304 increased linearly along the vertical axis until the distance of the vertical axis to the outer edge of the upper segment equals the distance from the vertical axis to the outer edge of the lower segment of rod 304.



**ANSWER:** Denied.

139. Ashworth is entitled to a declaratory judgment that claims 9-13 of the ’388 Patent are invalid.

**ANSWER:** Denied.

**COUNT IV**

**DECLARATORY JUDGMENT OF INVALIDITY ('645 PATENT)**

140. Ashworth incorporates Paragraphs 104 through 137 of its Counterclaims as though fully set forth herein.

**ANSWER:** Plaintiffs incorporate herein by reference their answers to paragraphs 104-137.

141. Claims 1-4 of the ’645 Patent are invalid because they fail to meet one or more requirements set forth in 35 U.S.C. §§ 102, 103, and 112.

**ANSWER:** Denied.

142. Claim 1 of the ’645 Patent reads as follows: A spiral conveyor comprising: a drive tower extending from a bottom to a top and rotatable about a vertical axis; a plurality of parallel drive members extending in length on the periphery of the drive tower from the bottom to the top; wherein the parallel drive members angle outwardly away from the vertical axis

toward the bottom in a lower portion of the drive tower; a conveyor belt positively driven without slip in a helical path around the drive tower by the drive members engaging an inside edge of the conveyor belt.

**ANSWER:** Admitted.

143. Claim 2 of the ’645 Patent reads as follows: A spiral conveyor as in claim 1 wherein the parallel drive members are at a constant distance from the vertical axis in an upper portion of the drive tower.

**ANSWER:** Admitted.

144. Claim 3 of the ’645 Patent reads as follows: A spiral conveyor comprising: a drive tower extending from a bottom to a top and rotatable about a vertical axis and including a plurality of parallel drive members extending in length from the top to the bottom; wherein the drive members include outwardly projecting ridges whose distance from the vertical axis varies from the top to the bottom of the drive tower wherein the distance of the ridges from the vertical axis increases toward the bottom in a lower portion of the drive tower; a conveyor belt positively driven without slip on a helical path around the drive tower by the ridges engaging an inside edge of the conveyor belt.

**ANSWER:** Admitted.

145. Claim 4 of the ’645 Patent reads as follows: A spiral conveyor as in claim 3 wherein the distance of the ridges from the vertical axis is constant in an upper portion of the drive tower.

**ANSWER:** Admitted.

146. As shown below in FIGS. 1 and 5 and described in the text of Pupp, for example, Pupp teaches and/or describes spiral conveyor with a drive tower (drum 1) extending from a bottom to a top and rotating about a vertical axis of rotation (vertical center shaft 4) wherein the conveyor belt follows a helical path through a plurality of turns:




**ANSWER:** Denied.

147. As shown below in FIG. 5 and described in the text of Pupp, for example, Pupp teaches and/or describes a plurality of parallel drive members (strips 10) extending in length on the periphery of the drive tower from the top to the bottom.




**ANSWER:** Denied.

148. As shown below in FIGS. 11-13 and described in the text of Roinestad, for example, Roinestad teaches and/or describes parallel drive members (tapered rods 304) that angle outwardly away from the vertical axis in a lower portion (closer to the bottom of the drive tower) of the drive tower where drive members (tapered rods 304) have projecting ridges whose distance from the vertical axis is not constant from the top to the bottom of the drive tower and actually increases in a lower portion that is toward the bottom of the drive tower.




**ANSWER:** Denied.

149. It would have been obvious to one of ordinary skill in the art to modify the drive members of Pupp in view of Roinestad as a mere design choice in view of the level of ordinary skill in the art as demonstrated by the teachings of Daringer to provide drive members that angle outwardly from the vertical axis in a lower portion of the drive tower.

**ANSWER:** Denied.

150. As described in the text of Pupp, for example, Pupp teaches and/or describes a conveyor belt that is positively driven in a helical path around the drive tower by the drive members engaging an inside edge of the conveyor belt.

**ANSWER:** Denied.

151. As shown below in FIGS. 11 and12 and in the text of Roinestad, for example,

Roinestad teaches and/or describes that the parallel drive members (rods 304) are at a constant distance from the vertical axis in an upper portion of the drive tower.

Fig. 11.



**ANSWER:** Denied.

152. Ashworth is entitled to a declaratory judgment that claims 1-4 of the ’645 Patent are invalid

**ANSWER:** Denied.

## REQUEST FOR RELIEF

The Prayer for Relief requires no response. To the extent that any response is required, Plaintiffs deny that Ashworth is entitled to any relief whatsoever, either as prayed for in the Counterclaims or otherwise.

## THE AFFIRMATIVE DEFENSES OF COUNTERCLAIM DEFENDANTS

Plaintiffs-Counterclaim Defendants’ Affirmative Defenses are listed below. Plaintiffs reserve the right to amend its answer to add additional Affirmative Defenses consistent with the facts discovered in this case.

### First Affirmative Defense- Failure to State a Claim

153. Defendant-Counterclaim Plaintiff's complaint fails to state a claim upon which relief can be granted.

154. Defendant-Counterclaim Plaintiff's complaint fails to show that each and every limitation is present in the prior art.

155. Defendant-Counterclaim Plaintiff improperly analyzes the alleged prior art and the accused device using different standards so as to assert invalidity on one hand while denying infringement on the other.

156. As properly construed, the asserted claims are valid and infringed.

**<u>Second Affirmative Defense – ’388 Patent Admission of Patentability</u>**

157. Plaintiffs-Counterclaim Defendants’ ’388 patent is discussed, *inter alia*, in paragraphs 27, and 46-66 of the Complaint. D.I. 1.

158. Figures from Ashworth’s Pat. No. 9,884,723 (“the ’723 patent”) are shown in paragraphs 50-55 and 59-66 of the Complaint. D.I. 1.

159. These figures provide a description of the machine that Ashworth claimed in the ’723 patent.

160. The Complaint at paragraphs 48-55 and 59-66 uses the figures to show how the machine of Ashworth’s ’723 patent is covered by the ’388 patent.

161. In the ’723 patent Ashworth sought patent protection for a machine already covered by Plaintiffs-Counterclaim Defendants' patents.

162. By seeking its own patent, Ashworth has admitted that the invention of the ’388 patent is patentable and hence the ’388 patent is valid.

163. Because the ’388 patent predates Ashworth's patents, Plaintiff's patent rights supersede any rights Ashworth could have to the same machine detailed in the ’723 patent, and the ’388 patent is not invalid.

**<u>Third Affirmative Defense – ’645 Patent Admission of Patentability</u>**

164. Plaintiffs-Counterclaim Defendants’ ’645 patent is discussed, *inter alia*, in paragraphs 27, 76-90 of the Complaint. D.I. 1.

165. Figures from Ashworth's '723 patent are shown in paragraphs 79, 82, 83, 86, and 88-90 of the Complaint. D.I. 1.

166. These figures provide a description of the machine that Ashworth claimed in the '723 patent.

167. The Complaint at paragraphs 78-83 and 86-90 uses the figures to show how the machine of Ashworth's '723 patent is covered by the '645 patent.

168. In the '723 patent Ashworth sought patent protection for a machine already covered by Plaintiffs-Counterclaim Defendants' patents.

169. By seeking its own patent, Ashworth has admitted that the invention of the '645 patent is patentable and hence the '645 patent is valid.

170. Because the '645 patent predates Ashworth's patents, Plaintiff's patent rights supersede any rights Ashworth could have to the same machine detailed in the '723 patent, and the '645 patent is not invalid.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

Jack B. Blumenfeld (#1014)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs Laitram, L.L.C. and Intralox, L.L.C.*

OF COUNSEL:

Arne M. Olson
Matthew De Preter
Shawn E. Duckworth
OLSON & CEPURITIS, LTD.
20 North Wacker Drive, 36th Floor
Chicago, IL 60606-3113
(312) 580-1180

September 25, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 25, 2019, upon the following in the manner indicated:

Karen L. Pascale, Esquire *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
*Attorneys for Defendant*

Robert F. Altherr, Jr., Esquire *VIA ELECTRONIC MAIL*
Christopher B. Roth, Esquire
BANNER & WITCOFF, LTD.
1100 13th Street, NW, Suite 1200
Washington, DC 20005
*Attorneys for Defendant*

*/s/ Anthony D. Raucci*

Anthony D. Raucci (#5948)